**UNITED STATE DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

APPEAL CASE NO.: 1:14-CV-20437-RSR
LWR. TRIBUNAL CASE NO.: 13-14289-LMI
_____

SAMUEL D. ROSEN,
Appellant,

v.

JOEL L. TABAS, SUCCESSOR TRUSTEE,
Appellee.
_____

_____

ON APPEAL FROM AN ORDER OF THE U.S. BANKRUPTCY COURT,
SOUTHERN DISTRICT OF FLORIDA
_____

**SUCCESSOR TRUSTEE'S, JOEL L. TABAS, MOTION TO DISMISS**
**APPEAL WITH INCORPORATED MEMORANDUM OF LAW**

Successor Trustee, Joel L. Tabas, pursuant to the Federal Rules of Bankruptcy Procedure and the Federal Rules of Civil Procedure, including S.D. Fla. Local Rules Rule 87.4 and argument by analogy with Fed. R. Civ. P. Rules 12, 19, and 41,[1] moves to

---

[1] In *Hann v. State Treasurer*, No. 07-13687, 2009 WL 724052, *4 (E.D. Mich Mar. 18, 2009), the District Court for the Eastern District of Michigan accepted and adopted the Magistrate Judge's Report and Recommendation of dismissal of that bankruptcy appeal, recognizing that the arguments under the Federal Rules of Civil Procedure, in that case Rules 12(b) and 41(b), are analogous and dismissed a bankruptcy appeal, stating that the same reasons for dismissing a frivolous case under Rule12(b)(1) apply to dismissing a frivolous bankruptcy appeal. *See also generally In re Hann*, 08-14516, 2009 WL 2872813 (E.D. Mich. 2009).

Dismiss the Appeal for lack of jurisdiction, and, as good grounds, states:

A.     **BACKGROUND**

1.     What is the legitimate purpose of the Appellant going forward with this appeal of an order on a mediation, which already took place, which was unsuccessful, and which Appellant later asked the Bankruptcy Court to again order the parties to resume?  Meaning, there was a mediation effort and it was not successful.  Creditor Rosen later asked the Bankruptcy Court during the February 13, 2014 hearing before that Court to return the parties to mediation.  *See* Attached Ex. "A", Feb. 13, 2014 Hearing Transcript Excerpts.  There is nothing to argue over, and the appeal proceeding is wasting Estate resources.  There is no purpose to this appeal proceeding other than to exhaust the Fort Lauderdale Bridge Club's resources and thereby cause the closing of a Bridge Club that has been serving the elderly in the Broward community for 60 years.  This is wrong under the law and it is wrong under the equities.  For the reasons set forth herein, it is respectfully submitted that this interlocutory appeal, for which no motion for leave to amend was ever filed, of issues now moot should be dismissed for lack of jurisdiction.

2.     On December 15, 2013, Appellant Samuel D. Rosen filed a corrected notice of appeal [Bankr. S.D. Fla. Case No. 13-14289-LMI DE594] of an Order Granting the Trustee's Request for Mediation [Case No. 13-14289-LMI Bankr. S.D. Fla. DE574] and an Order abating pending matters [designated as DE455, but DE455 is a BNC Certificate of Mailing.  DE445 is not an Order, but the Trustee's Request for Mediation itself].

3. On January 13, 2014, Appellate Rosen filed an "Expedited Motion for Stay of Mediation and Abatement of Proceedings Pending Appeal [DE594] of the Court's Order [DE574] Granting Trustee/Appellee's Request for Mediation DE-445."

4. In his Expedited Appeal Motion, Appellant Rosen asked that the "Court expedite the pending appeal and reverse the Order Granting Trustee's Request for mediation."

5. That appeal was assigned Case Number 0:14-60083-RSR (the "Presiding Court").

6. On January 14, 2014, the Presiding Court denied the Appellant's expedited motion for stay of the mediation scheduled for January 22, 2014 mediation (that January 22d mediation proceeded as scheduled).

7. By order rendered January 15, 2014, the Presiding Court noted that there was no motion for leave to appeal and no filing fee to accompany the Notice of Appeal [DE594], either and both of which were fatal, and further dismissed that appeal for lack of jurisdiction and on the basis that, even if it had jurisdiction, the appeal would fail as the subject order was well within the Bankruptcy Court's discretion, and ordered the Case be Closed.

8. On January 29, 2014, the Appellant filed a Motion to Vacate/Alter/Amend that January 15, 2014 Order of Dismissal in that Presiding Court, Case Number 0:14-mc-60083-RSR. *See* Case No. 0:14-mc-60083-RSR ECF4, ECF5 ("Appellant's Motion to Vacate"). That Motion is now before the Court.

9. That now-dismissed appeal, arising from the very same mediation-related notice of

3

appeal [Bankr. S.D. Fla. DE594] was docketed on February 4, 2014, as if it were a ripe appeal and a new case number was assigned, and subsequently transferred to this same Presiding Court, Case No. 1:14-CV-20437-RSR, on which the Court has ordered appeal briefing.

**B.  THE GROUNDS FOR THIS MOTION**

<u>INCORPORATED MEMORANDUM OF LAW</u>

10. As a threshold matter, this motion is timely and appropriate. Federal courts have a continuing obligation to inquire into their subject matter jurisdiction. *Univ. of S. Alabama v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999); *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1556–57 (11th Cir.1989). "[A] party may raise [subject matter] jurisdiction at any time during the pendency of the proceedings." *United States v. Giraldo-Prado*, 150 F.3d 1328, 1329 (11th Cir. 1998) (citing *United States v. Biro*, 143 F.3d 1421, 1431 (11th Cir.1998)).

11. Second, the Court lacks jurisdiction because the designated order that is the subject of this appeal—a mediation order—is a nonfinal order from which there is no appeal as a matter of right and the appeal is moot, that is, the objected-to mediation transpired months ago. Meaning, an appellate court has jurisdiction to review only those judgments, orders that are designated specified in an appellant's notice of appeal and against specified, intended appellees. *See Pitney Bowes, Inc. v. Mestre*, 701 F.2d 1365, 1374–75 (11th Cir.), cert. denied, 464 U.S. 893 (1983); *Osterneck v. E.T. Barwick Indus., Inc.*, 825 F.2d 1521,

1528-29 (11th Cir. 1987); Fed.R.App.P. 3(c) (requiring that a notice of appeal "designate the judgment, order or part thereof appealed from").

12. Title 28 U.S.C. 158(a) makes clear that our district courts have jurisdiction over appeals as of right only from "final judgments, orders, and decrees" of the bankruptcy courts, orders and decrees that increase or reduce section 1121 time periods (concerning filing plans), or with leave court.[2] None of those are present here. The mediation order is hardly final, as it leaves much judicial labor still in the Bankruptcy proceedings that continues even now. Mediation has nothing to do with a Plan. And there has been no motion for leave to appeal here.

13. In addition to the plain language of § 158(a), the undersigned has been unable to locate any federal decision reflecting that an order issued by a bankruptcy court that compels mediation has even been recognized as final and appealable as a matter of right.[3]

14. The only similar class of order is an order compelling arbitration and there is no

---

[2] 28 U.S.C. 158(a) states:
(a) The district courts of the United States shall have jurisdiction to hear appeals
    (1) from final judgments, orders, and decrees;
    (2) from interlocutory orders and decrees issued under section 1121(d) of title 11 increasing or reducing the time periods referred to in section 1121 of such title; and
    (3) with leave of the court, from other interlocutory orders and decrees;
    and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title. An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving.

[3] The database was "all federal" and the Westlaw query was: "adv: bankruptcy /p order /p compel /p mediation /p final".

appeal jurisdiction as a matter of right over a bankruptcy court order compelling or directing arbitration either. *See In re Pisgah Contractors, Inc.*, 117 F.3d 133, 136 (4th Cir. 1997), and decisions therein.  Title 9 U.S.C. § 16(a) "provides that an appeal may be taken from: (1) an order refusing a stay of any action pending arbitration under § 3 of the Act; denying a petition under § 4 or an application under § 206 for an order compelling arbitration; confirming or denying confirmation of an award following arbitration; or modifying, correcting, or vacating an arbitration award; (2) an interlocutory order granting, continuing, or modifying an injunction against arbitration; and (3) a final decision with respect to an arbitration." *See In re Pisgah Contractors, Inc.*, 117 F.3d at 136 at n.1.

15. Particularly helpful guidance, in *In re Pisgah Contractors, Inc.*, "the arbitration issue was only one of numerous substantive issues presented to the bankruptcy court in the context of an adversary proceeding instituted". *Id*. at  136.  No different here where the Bankruptcy Court entered an order directing the parties to mediation in the context of a larger chapter 11 dispute, the bankruptcy court in *In re Pisgah Contractors, Inc.*, directed "the parties to proceed to arbitration in the context of a larger breach of contract dispute", and the arbitration issue was, therefore, "'embedded' in Pisgah's substantive breach of contract claim", *id.*, just as the mediation is embedded in this larger bankruptcy chapter 11 dispute that is still ongoing in the instant case.  As such, Bankruptcy Court's order in the instant case is just as nonfinal as the district court's order in *In re Pisgah Contractors, Inc.*, at 136-37, was nonfinal under § 16(a)(3).

6

16.     The *In re Pisgah Contractors, Inc.*, court, additionally, recognized that an order compelling arbitration was only final when the sole issue before the court was the arbitrability of the dispute. *In re Pisgah Contractors, Inc.*, at 136-37 (citing *Altman Nursing, Inc. v. Clay Capital Corp.*, 84 F.3d 769, 770–71 (5th Cir. 1996) (an order concerning arbitration is "independent" and, therefore, "final" where the only issue before the court is the dispute's arbitrability); *Prudential Ins. Co. v. Lai*, 42 F.3d 1299, 1302 (9th Cir.1994) (a decision to compel arbitration is not reviewable unless the motion to compel arbitration "is the only claim before the district court"), *cert. denied*, 516 U.S. 812 (1995); *Adair Bus Sales, Inc. v. Blue Bird Corp.*, 25 F.3d 953, 955 (10th Cir.1994) (adopting majority approach permitting immediate review of order compelling arbitration only where "arbitrability is the sole issue before the district court")).  The almost 900 filings in the Bankruptcy Court docket and the now-eight appeals in the instant Bankruptcy case [DE258, DE277, DE435, DE437, DE594, DE629, DE630, DE870] plainly reflect that the issue of mediation here is one of many, many issues in this Bankruptcy matter.  As such, there is no finality and no appeal-as-of-right jurisdiction.

17.     The issues in the appeal are also moot.  Meaning, the objectionable mediation went forward in January 2014 and there is no longer any case or controversy whatsoever. See, e.g., *In re Steffen*, 13-11052, 2014 WL 170860 (11th Cir. 2014) (district court's orders dismissing appeal as moot and denying motion for reconsideration are affirmed); In re Cabot, 537 Fed. Appx. 891 (11th Cir. 2013) (district court properly dismissed, as moot,

creditor's second appeal, which involved his substantive objections to Chapter 7 trustee's fee request, where, when creditor's first appeal was dismissed, his only avenue to challenge trustee's fees was eliminated, such that nothing that Court of Appeals could decide with respect to second appeal would have any effect on bankruptcy court order awarding the disputed fees to trustee.).  In fact, the Appellant urged the Bankruptcy Court to send them back to the very mediation they appeal now.  *See* Attached Excerpts of Feb. 13, 2014 Transcript showing this mediation appeal is merely dilatory.

18.     Moreover, no motion for leave to appeal was filed and 28 U.S.C. § 158 specifically demands leave, and this is because, by complying with the motion for leave to appeal requirements of Fed. R. Bankr. P. 8003, the litigants alert the district court to the need for an informed exercise of discretion in deciding whether to grant leave to appeal.  Appellant filed nothing to alert the district court to the need for an informed exercise of discretion here.

19.     The reason for the rule? "Interlocutory review is generally disfavored for its piecemeal effect on cases." *Figueroa v. Wells Fargo Bank N.A.*, 382 B.R. 814, 823 (S.D. Fla. 2007) (citing *United States v. MacDonald*, 435 U.S. 850, 853 (1978); *Prado–Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1276 (11th Cir. 2000); *Colonial Bank v. Freeman, (In re Pac. Forest Prods. Corp.)*, 335 B.R. 910, 919 (S.D. Fla. 2005)).  In the instant case, where we are now up to eight interlocutory appeals by Creditor Samuel D. Rosen, with more than 900 filings and litigation of such magnitude that it has cumulatively rendered the

Estate currently administratively insolvent, this is a textbook example of why the "finality" rule should apply to this Creditor to bring forth all of his issues with the Bankruptcy Court's rulings in one final appeal, at which time all nonfinal rules are rendered final by operation of rule and can be adjudicated in one efficient proceeding, rather than piecemeal.

20. To further aid the Court's review of this issue of whether there should be any leave to appeal as to mediation order, the Eleventh Circuit Court of Appeals has not directly addressed whether the 28 U.S.C. § 1292(b) interlocutory appeal standards should apply to a district court's exercise of discretion to hear an appeal of an interlocutory order of a bankruptcy court, but the district courts within the Eleventh Circuit are applying 1292(b). *See, e.g., Figueroa*, 382 B.R. at 823–24 (S.D.Fla.2007) (1292(b) analysis of question of whether to exercise discretion to hear appeal of interlocutory order of bankruptcy court and collecting cases and providing a thorough 1292(b) analysis of the issues); *In re Celotex Corp.*, 187 B.R. 746, 749 (M.D. Fla. 1995) ("In determining when to exercise this [158(a)(3) ] discretionary authority, a district court will look to the standards which govern interlocutory appeals from the district court to the court of appeal pursuant to 28 U.S.C. § 1292(b) ."); *McCallan v. Hamm*, 502 B.R. 245, 249 (M.D. Ala. 2013).

21. Under 1292(b), a district court may deem an interlocutory order appealable if: (1) the order involves a controlling question of law to which there is substantial ground for difference of opinion; and (2) immediate appeal from the order materially advances the litigation's ultimate termination. As to an order involving a controlling question of law,

EASLEY APPELLATE PRACTICE, PLLC, 1200 Brickell Avenue, Suite 1950, Miami, Florida 33131 305-444-1599 800-216-6185

what that means is an "abstract legal issue or what might be called one of 'pure' law, matters the court of appeals can decide quickly and cleanly without having to study the record." *McFarlin v. Conseco Servs., L.L.C.*, 381 F.3d 1251, 1258 (11th Cir. 2004) (citations and quotes omitted). A 'legal question' means one to which there is substantial difference of opinion on the meaning of the relevant legal principle and not on the relevant legal principle's application to the facts. *See Burrell v. Bd. of Trs. of Ga. Military Coll.*, 970 F.2d 785, 788–89 (11th Cir. 1992). A controlling question of law is one that materially advances the termination of the litigation either serving to avoid a trial or somehow substantially shortening the litigation. *McFarlin*, 381 F.3d at 1258.

22.     It is patent here that the issue of whether the Bankruptcy Judge should have granted the Trustee's request for mediation does not involve a controlling question of law to which there is substantial ground for a difference of opinion. It is purely within the Bankruptcy Judge's discretion, and Creditor Rosen simply disagrees with the Bankruptcy Judge's issuance of an order to mediate on the facts of this particular case. There is no controlling legal principle here. At best, this is a dispute about the application of the law to a particular set of facts; not a "pure, controlling question of law" but a decision that requires this Court "to delve beyond the surface of the record in order to determine the facts." *McFarlin*, 381 F.3d at 1258. And the argument that the Bankruptcy Judge should have precluded mediation is an issue that would substantially *lengthen*, not shorten, the litigation. As such, Creditor Rosen does not even pass the first prong of the 1292(b) standard for exercising

discretionary jurisdiction, and this Court should decline to exercise its discretionary jurisdiction under 28 U.S.C. § 158(a)(3).

**C.   THE REQUESTED RELIEF**

21.   Accordingly, Successor Trustee, Joel L. Tabas, moves to dismiss this appeal on the basis that the order that is the subject of this appeal is not final and the Court, therefore, lacks jurisdiction over it, the Appellant filed no motion for leave to appeal, and the mediation that is the subject of the appeal is moot.

22.   While the Federal Rules of Civil Procedure also reflect that a motion to dismiss tolls the time until the Court rules, the Successor Trustee further requests in an abundance of caution that the appeal be tolled/time to file and serve the Answer Brief be stayed, pending resolution of this Motion.

**For the reasons and legal authorities set forth herein**, it is respectfully requested that the Court grant this Motion to Dismiss this Appeal, and enter an order expressly reflecting that this appeal is tolled/time is extended until the pendency of resolution of this Motion.

Respectfully submitted,

**BY:**   /S/ DOROTHY F. EASLEY, MS JD BCS APPEALS
FLA. BAR NO. 0015891
EASLEY APPELLATE PRACTICE PLLC
*Appellate Counsel for Successor Trustee*
1200 BRICKELL AVENUE, SUITE 1950
MIAMI, FLORIDA 33131
T: (305) 444-1599; (800) 216-6185

FLORIDA BAR DESIGNATED E-MAIL FOR SERVICE:
administration@EasleyAppellate.com
www.easleyappellate.com

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been was served using the CM/ECF system **and**: served electronically by eMail *or* the firm's secure dropbox *or* by regular US Mail (if no electronic means of service available) and email to all parties who are not on the list to receive email notification/service for this case on this  19th   day of March 2014 to:

> *I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-I (A)*

> **By:**     /S/ DOROTHY F. EASLEY, MS JD BCS APPEALS

| | |
|---|---|
| CHAD P PUGATCH, ESQ. cpugatch.ecf@rprslaw.com | OFFICE OF THE US TRUSTEE USTPRegion21.MM.ECF@usdoj.gov |
| DAMARIS D ROSICH-SCHWARTZ, ESQ. Damaris.D.Rosich-Schwartz@usdoj.gov | Samuel D. Rosen* 10175 Collins Ave. Apt. 502 |
| DOUGLAS C. BROEKER, ESQ. SWEET APPLE, BROEKER & VARKAS, P.L. 777 Brickell Avenue, Suite 600 Miami, Florida 33131 Florida Designated Email: doug@broekerlaw.com DocService@broekerlaw.com Jamie@broekerlaw.com | Bal Harbour, Florida 33154 **\*Served by US Mail**  JOEL L. TABAS, ESQ. GARY M. FREEDMAN, ESQ. TABAS, FREEDMAN & SOLOFF, P. A. *Attorneys for Trustee, Joel L. Tabas* One Flagler Building 14 Northeast First Ave-PH Miami, Florida 33132 |
| DREW M DILLWORTH, ESQ. ddillworth@stearnsweaver.com | Florida Designated Email: |

| | |
|---|---|
| ERIC J SILVER, ESQ.<br>esilver@stearnsweaver.com<br><br>PAUL J. BATTISTA, ESQ.<br>pbattista@gjb-law.com<br><br>PETER E. SHAPIRO, ESQ.<br>pshapiro@shapirolawpa.com<br><br>SONEET R. KAPILA, ESQ.<br>mwalker@kapilaco.com<br><br>THOMAS L ABRAMS, ESQ.<br>tabrams@tabramslaw.com | gfreedman@tabasfreedman.com<br>jtabas@tabasfreedman.com<br>jlt@tfsmlaw.cm<br><br>EASLEY APPELLATE PRACTICE PLLC<br>DOROTHY F. EASLEY, MS, JD, BCS APPEALS<br>FLA. BAR. NO. 0015891<br>1200 BRICKELL AVENUE, SUITE 1950<br>MIAMI, FLORIDA 33131<br>Florida Bar Designated E-Mail:<br>Administration@Easleyappellate.Com<br>*Appellate Counsel for Successor Trustee* |

Page 1

```
 1        UNITED STATES BANKRUPTCY COURT
          SOUTHERN DISTRICT OF FLORIDA
 2
          Judge Laurel Myerson Isicoff
 3
 4  IN RE:
 5  THE FORT LAUDERDALE      CASE NO: 13-14289-BKC-LMI
    BRIDGE CLUB, INC.,
 6       Debtor.
    _____/
 7
 8
         ALL MOTIONS ON CALENDAR: (701), (700), (703),
 9       (713), (711), (704), (712), (710).
10
11             FEBRUARY 13, 2014
12
13
14       The above-entitled cause came on for hearing
15  before the HONORABLE LAUREL M. ISICOFF, one of the
16  Judges in the UNITED STATES BANKRUPTCY COURT, in and
17  for the SOUTHERN DISTRICT OF FLORIDA AT LARGE, at 51
18  SW 1st Avenue, Miami, Dade County, Florida, commencing
19  at or about 11:30 a.m. on February 13th, 2014, and the
20  following proceedings were had:
21
22
23       Reported by: Carmen E. De La Cruz
24
25
```

Page 2

```
 1           APPEARANCES:
 2
 3       JOEL L. TABAS, CHAPTER 11 TRUSTEE
 4
 5       GAMBERG & GAMBERG, by
         THOMAS ABRAMS, Esquire (via telephone)
 6       On behalf of the Debtor.
 7
 8       SWEETAPPLE BROEKER & VARGAS, PL, by
         DOUGLAS BROEKER, Esquire
 9       of counsel to Samuel D. Rosen.
10
11       EASLEY APPELLATE PRACTICE, PLLC, by
         DOROTHY F. EASLEY, Attorney-At-Law
12       on behalf of Successor Trustee.
13
```

Page 3

```
 1       THE COURT:  All right.  We're here on The
 2  Fort Lauderdale Bridge Club matter.  I'll take
 3  appearances starting with the trustee.
 4       MS. EASLEY:  Good morning, Your Honor.
 5  Dorothy Easley with the successor trustee Joel Tabas.
 6       THE COURT:  All right.
 7       MR. BROEKER:  Good morning, Your Honor.
 8  Douglas Broeker and with me is Sandy Rosen.
 9       MR. ROSEN:  Good morning, Your Honor.
10       THE COURT:  Good morning.
11       Okay.  And on the telephone?
12       MR. ABRAMS:  Tom Abrams for the debtor.
13       THE COURT:  Okay.  Is there anyone else on
14  the phone?  Okay.  All right.  We're here this morning
15  on a very limited matter and that has to do with the
16  designations.  I do have a couple of preliminary
17  matters that I would just like to address.
18       First of all, hopefully, Mr. Broeker, by
19  now you understand the proper format of the orders and
20  I'll get those in the proper format from now on.
21       MR. BROEKER:  Yes, Your Honor.  I will do
22  that.
23       THE COURT:  Okay.  All right.  The other
24  thing is there was some confusion regarding your
25  notice of unavailability.  We were actually going to
```

Page 4

```
 1  cancel the hearing today because it was missed and
 2  then my courtroom deputy called you and it turned out
 3  that you decided not to go away or there was a
 4  mistake.
 5       MR. BROEKER:  Yes.
 6       THE COURT:  And then moreover, a few weeks
 7  ago I continued a hearing twice for a notice of
 8  unavailability that had not been filed on behalf of
 9  Mr. Rosen.  So, I'm going to ask everybody, not just
10  you, Mr. Broeker, to be more careful about the notices
11  of unavailability and we'll make sure that we're
12  careful to read them before we set hearings.  So,
13  okay?
14       MR. BROEKER:  Yes.  Thank you, Your Honor.
15       THE COURT:  All right.  So, Mr. Broeker
16  and Mr. Tabas or Ms. Easley, we're here this morning
17  solely on the two motions for extension of time on
18  designations which originally I was going to sign
19  until it was pointed out to me by virtue of the
20  trustee's pleadings that they had been filed after the
21  expiration of the deadline with no request that the
22  deadline be excused by virtue of Rule 9006.
23       I've reviewed, Mr. Tabas and Ms. Easley,
24  the pleadings that have been filed by you and I've
25  also reviewed your documents.  I set this for hearing
```

1 (Pages 1 to 4)

OUELLETTE & MAULDIN COURT REPORTERS, INC.
(305) 358-8875

Exhibit A  February 13, 2014 Hearing Excerpts         1

Page 37

1 understand that you were distracted by the time period
2 between the 20th and 24th, I have no understanding as
3 to why between the 10th and 20th you did not file your
4 designations on time. And excusable neglect, the case
5 law is very clear, has to be something more than even
6 I didn't understand the rules. Now, that's not an
7 argument you made, and I respect that and obviously
8 you understand the rules. But in this particular
9 instance from the 10th when you filed the motion until
10 the 24th, I believe that's when you filed your
11 designations, let me just check, the 24th when you
12 filed your designations you have not provided any
13 explanation -- well, let me back up.
14         I've considered your request under 9006,
15 notwithstanding that it wasn't asked for. So I want
16 to make that clear. And having -- being familiar with
17 the case law and understanding the rules and having
18 considered your explanation, I find that under the
19 applicable case law that you did not demonstrate
20 excusable neglect for failing to timely file your
21 designation. And therefore, I am overruling or
22 denying your motion to extend time 704, and I am
23 granting the motion to strike ECF 711, and I am
24 granting the motion to dismiss appeal ECF 701.
25         Now, I believe that I've articulated

Page 38

1 adequately the basis for my ruling on the record and
2 I'm doing that to avoid taking additional time and
3 expense by either party. So, I anticipate seeing
4 orders that say as follows; for the reasons stated on
5 the record the motion to dismiss is granted, with
6 respect to the motion to strike, for the reasons
7 stated on the record, the motion to strike is granted.
8 And then on ECF 704, for the reasons stated on the
9 record, the supplemental motion is denied.
10         And do you believe, Mr. Broeker, that for
11 purposes of appeal, which I anticipate you will do,
12 that you need anything further than the reference to
13 the record?
14         MR. BROEKER: No, Your Honor. I believe
15 you've expressed the basis for your ruling.
16         THE COURT: Okay. Ms. Easley?
17         MS. EASLEY: No, Your Honor.
18         THE COURT: Okay. Then I'll ask that
19 those orders be prepared. If they are as basic as
20 I've just stated, which they should be, then you may
21 upload them into E-orders. I don't think we need to
22 take the time to the review order. If it says
23 anything other than what I've just said, then you need
24 to send it to Mr. Broeker first for his review, which
25 I hope it doesn't because I specifically told you not

Page 39

1 to put that in the order. Okay?
2         MS. EASLEY: Yes, Your Honor. We
3 understand.
4         MR. ROSEN: Your Honor, may I address the
5 Court for a moment on a different issue?
6         THE COURT: Very briefly, Mr. Rosen,
7 because I have to be back at 1:30 for a disclosure
8 statement hearing.
9         MR. ROSEN: I will take about six minutes,
10 I think.
11         THE COURT: Well, if it's for anything
12 that I've set for hearing next week, then I will
13 consider it next week on the 20th.
14         MR. ROSEN: No, it's my request to
15 postpone next week and I'll tell you why. I took ill
16 the middle of December, it's a serious problem. I
17 went on a cruise with my girlfriend because we had
18 already paid for it.
19         THE COURT: I -- you don't need to explain
20 why you do or do not take vacations, Mr. Rosen.
21         MR. ROSEN: Well, let me get up to date.
22 About ten days ago after realizing that I was not
23 going to get a dime out of this case because as
24 counsel said and Mr. Tabas has said before, this
25 estate is administratively insolvent. I said to

Page 40

1 myself why am I even involved in this, I would really
2 like to just get out this case entirely. This has
3 just been a war going on. Mr. Abrams today filed the
4 third or three motions in one week against me, the
5 third, and I called Mr. Broeker last week and I said
6 look --
7         THE COURT: Well, don't go into
8 attorney/client.
9         MR. ROSEN: It's okay. This is very
10 simple. I said to him, I do not have the physical
11 strength, I cannot work more than a couple of hours a
12 day. I can't help you. I am spending up to 12 hours
13 a day in bed on a respirator and it makes no sense
14 because I'm going to get nothing.
15         I said please contact Mr. Tabas and see if
16 we can just sit down and wipe the slate clean so I can
17 walk out here and meaning no disrespect, never stand
18 at this podium again. And Mr. Broeker at my request
19 sent an e-mail to Mr. Tabas on Thursday, the 6th of
20 February. I, also at the same time, was looking to
21 try to resume the settlement of the mediation
22 discussions. I don't know if you're aware of this,
23 but in addition to the final report that mediator
24 filed on January 24th, he also separately sent
25 everybody an e-mail that said, even though I filed my

10 (Pages 37 to 40)

Page 41

1 report, I'm still on the case, I'm still actually
2 willing to serve pro bono and he's had many
3 conversations towards trying to bring this to an end.
4 I called him and Mr. Spector and I said, look, can we
5 resume the mediation?  I think we can put a deal
6 together in two parts.  One, my claims against the
7 individuals and, two, the claims involving the estate.
8 And Mr. Broeker wrote back -- excuse me.  Mr. Tabas
9 then called Mr. Broeker on Friday, February 7th, and
10 gave him a proposal, as best he could take the notes,
11 he took the notes, he called me, I was home.
12          Judge, I have to tell you.  I've been in
13 Mr. Broeker's office twice since the begin of the
14 year, each for an hour or an hour and a half that's
15 it.  I cannot work.
16          THE COURT:  Okay.  What is that you're
17 asking me today?
18          MR. ROSEN:  I am asking you to do what I
19 asked Mr. Tabas to do.  We scheduled -- Mr. Spector
20 scheduled the mediation for the 19th of February in
21 two parts.  One o'clock with the carrier on the -- on
22 my individual claims and three o'clock he scheduled
23 with the trustee.
24          All I asked was, I can't do -- I can't
25 prepare papers and prepare for an argument on what is

Page 42

1 now seven or eight different motions on the 20th and
2 at the same time prepare for the mediation.  I just
3 don't have the physical strength.  I want to end it.
4 And I can't end it by talking to Mr. Tabas because he
5 declines to talk to me.  And I can't end it through
6 Mr. Broeker, because Mr. Broeker is on the phone with
7 him taking notes and when he tells me what he says,
8 it's lost in translation.  And that's why I called
9 Mr. Spector and said, are you willing to resume the
10 mediation and he said, yes.  And we asked him if we
11 could do it as soon as possible and he said he's
12 booked up solid until I don't know, the middle of
13 March.
14          Finally, Mr. Broeker was able to prevail
15 upon him to free four hours on February 19th, that's
16 the only day he has.  The only day he has for four
17 hours.  I can't swear to you that if this mediation
18 goes forward on the 19th that you will never see me
19 again, because I am not well, but by the same token,
20 I'm not prepared to capitulate to motions like the one
21 that was just filed today.
22          THE COURT:  Okay.  I'm going to -- before
23 you go on --
24          MR. ROSEN:  All -- I'm sorry.  Let me just
25 finish please.  I apologize, Your Honor.  I'm going to

Page 43

1 sit down.
2          THE COURT:  Go ahead.
3          MR. ROSEN:  All I'm asking you to do is
4 give peace a chance.  Give me two weeks adjournment
5 and by the way, I have to tell you, two of the motions
6 I don't even want to appear on and you can -- because
7 its -- they're going to be decided on the papers.  If
8 you want me here to argue them, I will come.  But I'm
9 saying to the extent there's a waiver of them, that
10 would be fine.
11          I do not need to appear on 731.
12          MR. ABRAMS:  Judge, I'm --
13          MR. ROSEN:  Excuse me.  Or 720 --
14          MR. ABRAMS:  This hasn't been noticed for
15 hearing.
16          THE COURT:  I understand that, Mr. Abrams.
17          MR. ROSEN:  -- or 729.  And I understand
18 that Mr. Abrams is looking to get as well 7 --
19          THE COURT:  Okay.  Mr. Rosen, what you're
20 asking for is a continuance of the matter on the 20th
21 because you're attending a mediation with the parties
22 on the 19th.  Is that correct?
23          MR. ROSEN:  That's correct.
24          THE COURT:  Okay.
25          MR. ROSEN:  And I just cannot physically

Page 44

1 do -- write the papers that are necessary.  I should
2 also note one other thing, Your Honor.  You did one
3 thing that I thought was very, very astute and that
4 was when it came to the motion to dismiss, you set out
5 a briefing schedule.  Of the items that you have
6 listed and noticed for next -- for the 20th, there are
7 virtually no opposing papers filed by anybody and that
8 includes me.  The trustee -- I think I have like two
9 or three motions on and that's it, but the trustee has
10 filed no opposition papers.  The -- I have filed no
11 opposition papers, I don't think.  I can't be sure at
12 this point anymore because I can't see, but I think
13 the briefing schedule on the ones that are on for the
14 20th would be helpful starting the week after.
15          THE COURT:  Okay.  Mr. Rosen, I truly
16 appreciate that based on your experience as a lawyer
17 that you're trying to help me to be a judge, but I
18 have done what I prepared to do.
19          What I will consider right now and I'll
20 ask for comments is your request to continue the
21 hearing on the 20th because you are attending a
22 mediation on the 19th.
23          MR. ROSEN:  And all I ask for is two
24 weeks.
25          MR. ABRAMS:  Judge, there has been no

11 (Pages 41 to 44)

Page 45

1 mediation set.
2      MR. ROSEN:  Yes, it has.
3      THE COURT:  Okay.
4      MR. ABRAMS:  If he --
5      THE COURT:  Mr. Rosen, if you'll sit down
6 and, Mr. Abrams, I'll ask you to address me when I ask
7 you to address me.
8      Okay.  So, Mr. Tabas, are you going to
9 speak with respect to this or Ms. Easley?
10      MR. TABAS:  I will, Judge.
11      THE COURT:  Okay.  On the motion to
12 continue the hearings on the 20th because there's a
13 mediation scheduled, your response?
14      MR. TABAS:  We oppose that.  I don't want
15 to get into any settlement discussions, but there has
16 been extensive discussion.  There were conditions to
17 going forward with the mediation imposed by both
18 sides.  There is nothing that we strongly oppose
19 postponing this any further.  We're always willing to
20 talk.  We're in communication with Mr. Broeker.  We're
21 in communication with Mr. Spector and we're not
22 optimistic based on where things are that it will get
23 resolved and we strongly oppose continuing the
24 matters.
25      THE COURT:  Okay.  Mr. Abrams?

Page 46

1      MR. ABRAMS:  I concur with the trustee.
2      THE COURT:  Okay.
3      MR. ROSEN:  Your Honor, can I just respond
4 quickly?
5      THE COURT:  Yes, Mr. Rosen, you may.
6      MR. ROSEN:  The conversation with
7 Mr. Spector we all agree on one thing.  The reason the
8 first installment of the mediation is set for one
9 o'clock, not with Mr. Tabas but with the carrier and
10 the counsel is because if we settle that, if we settle
11 my claims against the individuals, it is a given that
12 that is going to go a long way, if not the entire way,
13 towards settling my claim against the club and for me
14 being able to get out of here.  And the reason is very
15 simple.  The carrier has stated its desire to avoid
16 transactional cost.  When we meet with the carrier and
17 Mr. Spector at one o'clock, if we reach an agreement
18 on the dollar amount, the carrier is certainly going
19 to insist that I also release the other insured, the
20 club.  I mean, it would be absolutely senseless for
21 the insurer to pay me to settle the claims against the
22 individuals and leave me to continue the claims
23 against the club.
24      THE COURT:  Okay.  Mr. Rosen, I'm going to
25 ask you this, with respect to your physical

Page 47

1 situation --
2      MR. ROSEN:  Yes.
3      THE COURT:  -- I am willing to move the
4 hearings to the afternoon, they're not going to be
5 evidentiary, I'm just going to hear argument.  And
6 that would be starting at one o'clock on the 20th.
7 Will starting in the afternoon assist you?
8      MR. ROSEN:  No, Your Honor, I can't.  I
9 mean, I can't prepare.  I can't prepare papers.  I
10 can't read the cases that are being cited.  I'm sorry,
11 Your Honor.  I physically cannot do it.
12      MR. ABRAMS:  Judge, can I comment?
13      THE COURT:  Mr. Abrams, wait until I ask
14 you to speak.  If you interrupt me again, I will not
15 allow you to appear by phone anymore.  Is that clear?
16      MR. ABRAMS:  Yes, Your Honor.
17      THE COURT:  Finish what you're saying,
18 Mr. Rosen.  I am now -- you are now way past your six
19 minutes.
20      MR. ROSEN:  Your --
21      THE COURT:  No, no.  Finish what you have
22 to say.  I don't want to hear an argument for next
23 week.  What I want to understand is, I asked you a
24 question.  You're telling me you're not physically
25 able to do it, I appreciate it.  But when you sit here

Page 48

1 and you start complaining about all the motions that
2 are being filed against you, that is going to fall on
3 deaf ears here because you file a great many motions
4 as well.
5      So, let's move beyond who files what, when
6 they file it, okay, and just focus on the fact that
7 you're arguing that you cannot be at a mediation on
8 Wednesday and then be physically present for court on
9 Thursday because of your physical condition.
10      MR. ROSEN:  Well, no, it's not that I
11 can't be physically here on Thursday, I can't spend
12 the time between now and next Thursday to write the
13 papers, to prepare, to address you intelligently on
14 these motions.  It's not the physical appearance,
15 Judge.  It's I have to read the cases.  I have to
16 prepare opposing papers.  You have no opposing papers
17 from -- on any of them at all.  If I led you to
18 believe it was just showing up, it's not that at all,
19 Judge.
20      And I must say this, and I'm just going to
21 lay it out.  I need to get out of this case.  And when
22 I say I need to get out of this case, we're talking --
23 I'm talking with the mediator about --
24      THE COURT:  I don't want to know what
25 you're talking with the mediator.

12 (Pages 45 to 48)